FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 15, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

BARRY CHAPMAN, husband; and
JESSIE NORRIS, wife,

                              Plaintiffs,

         v.

STATE FARM FIRE AND
CASUALTY COMPANY, a foreign
company,

                              Defendant.

NO:  2:17-CV-225-RMP

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
DENYING PLAINTIFFS' MOTIONS
TO AMEND COMPLAINT AND TO
STRIKE DECLARATION

BEFORE THE COURT is a motion for summary judgment by Defendant

State Farm Fire and Casualty Company ("State Farm"), ECF No. 24; a motion to

amend or correct the complaint by Plaintiffs Barry Chapman and Jessie Norris

("Chapman"), ECF No. 29; and a motion to strike, also by Chapman, ECF No. 45.

Having reviewed the parties' submissions, the remaining docket, and the relevant

law, the Court is fully informed.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFFS' MOTIONS TO AMEND COMPLAINT AND TO
STRIKE DECLARATION ~ 1

# BACKGROUND

## Procedural History

Before filing this lawsuit, Chapman filed and served a claim and complaint on State Farm on October 11, 2016, pursuant to the Insurance Fair Conduct Act ("IFCA"), in chapter 48.30 of the Revised Code of Washington ("RCW"). Chapman asserts that the 20-day IFCA notice "set forth the basis for the reasons for the [IFCA] claim including violations of WAC 284-30-330, RCW 48.30.015 and finally for any other violations is [sic] formal discovery in the underlying action otherwise disclosed." ECF No. 29 at 3.

On October 25, 2016, Chapman filed his complaint in Pierce County Superior Court, stating only claims for breach of insurance contract and breach of the duty of good faith and fair dealing. ECF No. 1-1. The complaint sought "compensatory and exemplary damages for any injury, harm, economic and non-economic damages or losses," as well as Chapman's attorneys' fees and costs and "such other and further relief as the Court deems just and equitable." ECF No. 1-1 at 5. In explaining why Chapman filed the complaint fewer than twenty days after providing the IFCA notice, Chapman recounts: "Because the State Farm policy had a shorter limitation time for filing a breach of contract action, the lawsuit was required to be filed before the IFCA notice time had run." ECF No. 29 at 3; *see also* ECF No. 25-2 at 8 (citing a portion of the insurance contract that provided that "[n]o action shall be brought

unless there has been compliance with the policy provisions and the action is started within one year after the date of loss or damage.").

State Farm removed the action to this Court on June 19, 2017. ECF No. 1. The Court scheduled a bench trial scheduling conference for November 9, 2017, ECF No. 8, and the parties submitted a joint status certificate in preparation for the conference, ECF No. 9. The certificate indicated: "Plaintiffs . . . anticipate filing a motion to amend the complaint to add counts alleging violations of the Washington Insurance Fair Claims Act and the Washington Consumer Protection Act." ECF No. 9 at 2.

After discussion with the parties at the scheduling conference, the Court issued a bench trial scheduling order that, among other deadlines and hearings scheduled, set a December 21, 2017 deadline for moving to amend the pleadings. ECF No. 11 at 3.

There is no dispute that despite subsequent stipulated motions to amend pretrial deadlines and continue the trial date by the parties, the December 21, 2017 deadline to move to amend pleadings remained intact. *See* ECF Nos. 17, 19, 21, and 22. The discovery cutoff in this matter passed on December 19, 2018. ECF No. 22. The dispositive motion deadline passed on January 10, 2019. *Id.* A bench trial is scheduled for May 13, 2019. ECF No. 19 at 9.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTIONS TO AMEND COMPLAINT AND TO STRIKE DECLARATION ~ 3

**Underlying Facts**

The following facts are undisputed, unless otherwise noted.

Chapman owns a rental property in Spokane, Washington, that was built in 1909. ECF Nos. 1-1 at 3; 25-9 at 3. On approximately October 26, 2015, a fire next door to the property damaged Chapman's rental property, to the point that the property was uninhabitable. ECF Nos. 1-1 at 3; 36-1 at 1. The home was unoccupied at the time, while Chapman undertook a limited remodeling project. ECF No. 25-5 at 9. Thus, Chapman was not holding the property out for rent at the time of the fire. ECF No. 25-10 at 3.

During the relevant time period, Chapman held a rental dwelling insurance policy through State Farm that insured the "residence premises" for "property damage," including "physical damage to or destruction of tangible property, including loss of use of [the] property." ECF Nos. 25-1 at 8; 36-1 at 1. The policy covered damage to the dwelling (Coverage A) up to $136,900, with 20% extra replacement cost coverage up to $13,690, available under circumstances explained below; damage to personal property (Coverage B) up to $6,845; and loss of rent (Coverage C) up to the amount of the actual loss. ECF No. 25-1 at 3. The parties dispute Coverage A at this stage in the lawsuit.

With respect to Coverage A, for damage to the dwelling, an "Extra Replacement Cost Coverage Endorsement" was in place that provided:

We will settle covered losses for the amount you actually and necessarily spend to repair or replace the dwelling under Coverage A . . . up to the applicable limit of liability shown in the **Declarations**. If the amount spent for covered damage exceeds the applicable limit of liability stated in the **Declarations**, an additional 20% of the stated limit is available to cover the cost of repair or replacement.

*Id.* at 31.

In addition, Coverage A was subject to the following parameter:

[State Farm] will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding *the smaller of the following amounts*:

(a)     The replacement cost of that part of the building damaged *for equivalent construction and use* on the same premises;

(b)     The amount actually and necessarily spent to repair or replace the damaged building; or

(c)     The limit stated in the Extra Replacement Cost Coverage provision.

*Id.* at 14 (emphasis added).

The insurance policy defined "replacement cost" as "the cost, at the time of loss, to repair or replace the damaged property with *new materials of like kind and quality*, without deduction for depreciation." ECF No. 25-1 at 21 (emphasis added). The policy did not define "equivalent construction and use" or "like kind and quality."

The following terms were also in place regarding payment of actual cash value ("ACV") versus replacement cost value ("RCV"):

[State Farm] will pay the actual cash value of the damage to the buildings, up to the policy limit, until actual repair or replacement is completed.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTIONS TO AMEND COMPLAINT AND TO STRIKE DECLARATION ~ 5

[The insured] may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis. . . .

Until actual repair or replacement is completed, [State Farm] will pay only the actual cash value at the time of the loss of the damaged part of the building, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the building;

When the repair or replacement is actually completed, [State Farm] will pay the covered additional amount [the insured] actually and necessarily spend[s] to repair or replace the damaged part of the building, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less; and

To receive any additional payments on a replacement cost basis, [the insured] must complete the actual repair or replacement of the damaged part of the building within two years after the date of loss, and notify [State Farm] within 30 days after the work has been completed.

*Id.* at 34.

After the fire, Chapman immediately reported the loss to State Farm, and State Farm accepted coverage of the claim. ECF No. 25 at 3.

Between December 2015 and August 2016, Chapman and State Farm exchanged estimates and proposals regarding the scope of work and the method and cost of repair. State Farm, through claims adjuster Dan Teel, provided its initial loss and repair estimate in November 2015, followed by a revised estimate in December 2015. Chapman requested that State Farm send its revised estimate to a contractor

who Chapman was considering hiring to repair the property, Pat Cummings of Capstone Construction. ECF No. 25-2 at 6. In February 2016, Cummings had reviewed the estimate, inspected the property, and agreed that the estimate covered the damage, with the possibility that there could be "a supplement for something" once work commenced. ECF Nos. 25-2 at 6; 25-5 at 22. Cummings indicated that his company could start the repair work by mid-February 2016 and could complete the project within six months. ECF No. 25-2 at 6.

By the end of February 2016, Chapman hired public adjuster Roger Maib to develop his own loss and repair estimate, which he provided at the end of March 2016. In April 2016, State Farm engaged a consulting contractor, Covington Construction, to develop a new repair estimate. Covington Construction provided its initial loss and repair estimate in May 2016 and subsequently revised the estimate in July 2016. Chapman obtained an additional estimate from Belfor Property Restoration ("Belfor") to try to reconcile what he viewed as "wildly disparate amounts" among the various estimates received up until July 2016. ECF No. 25-5 at 35. Belfor prepared an estimate by the beginning of August 2016, which Covington Construction then reviewed. Covington Construction declined to revise its own estimate based on the Belfor information. *See* ECF No. 25-2 at 3.

The progression of loss estimates from State Farm during this time period is summarized, with approximate dates, here:

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTIONS TO AMEND COMPLAINT AND TO STRIKE DECLARATION ~ 7

| Date | ACV | RCV |
|---|---|---|
| November 9, 2015 (from State Farm) | $53,755.62 | — |
| December 22, 2015 (from State Farm and approved by Capstone Construction in February 2016) | $53,755.62 | $92,402.94 |
| May 17, 2016 (from Covington Construction) | $94,998.29 | $116,936.86 |
| July 8, 2016 (from Covington Construction) | $98,883.14 | $120,821.71 |

ECF Nos. 36-1, 36-2.

The loss estimates from Chapman are summarized as follows:

| Date | ACV | RCV |
|---|---|---|
| March 31, 2016 (from Maib) | $214,229.19 | $239,185.15 |
| June 27, 2016 (from Maib) | $199,686.85 | $224,642.81 |
| August 24, 2016 (from Belfor) | — | $150,080.03 |

ECF No. 25-2.

By July 14, 2016, State Farm had paid $98,883.14 in total for ACV. State Farm indicated to Chapman that it would pay up to $120,821.71 in replacement cost benefits, with an additional $21,293.17 available if warranted by new information uncovered during repair, once Chapman undertook the actual repair or replacement of the damaged portion of the property. ECF No. 25-2 at 7−8.

State Farm's claim adjuster Teel acknowledged that "there are things that come up from time to time as the repairs get underway that we would be willing to

look at and consider." ECF No. 25-6 at 5. Chapman himself did not understand the payments he received to be final payment of the claim. ECF No. 25-5 at 17.

The parties dispute the adequacy of State Farm's final repair estimate and proposed repair methodology, specifically regarding whether replacement of the entire fir tongue-and-groove flooring ("fir floors") located underneath other later-installed forms of finished flooring was necessary. *See* ECF No. 33 at 2. Chapman characterizes the fir floors as running "continuously" throughout the home. *Id.* State Farm submitted a declaration by Brian Daniels, a general contractor and construction consultant that posits that Chapman's use of the term "continuous" is "undefined and ambiguous." ECF No. 41 at 2. Moreover, Daniels declared that, "[t]o the extent plaintiffs contend that 'continuous' means the tongue-and-groove flooring ran in uninterrupted planks across the entire east to west span of the home, my review of the available evidence does not support plaintiffs' position." *Id.*

It is undisputed that the wall framing of the house was built on top of the fir floors, which was the construction method at the time the house was built in 1909. *See* ECF No. 25-3 at 8. Contemporary construction methods entail building vertical stud walls on a subfloor, and installing finished floors up to the edge of, but not under, the stud walls. *See* ECF No. 33 at 2. It is further undisputed that at the time of the fire, the fir floors were covered with a variety of finished flooring materials, including oak hardwood, vinyl, tile, and carpet. ECF No. 25-5 at 10.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTIONS TO AMEND COMPLAINT AND TO STRIKE DECLARATION ~ 9

1   The Covington Construction estimate of July 8, 2016 ("Covington Estimate")

2   involved cutting out and removing the final and fir flooring from around undamaged

3   interior walls with a Sawzall, a type of reciprocating saw. *See* ECF Nos. 36-4 at 3;

4   39 at 4. By contrast, Maib contended that all walls and all flooring needed to be

5   removed and rebuilt using the same construction technique that was used in 1909,

6   which entails building new walls on top of replacement fir floors, rather than merely

7   on top of a patched subfloor, to restore the property to the pre-fire condition. *See*

8   ECF Nos. 25-8 at 4; 36-4 at 7−10.

9        The parties dispute whether the Covington Estimate accounts for removal and

10  replacement of all damaged areas of the property. For instance, Chapman maintains

11  that State Farm's estimate and method "disregard the damaged floor under the stud

12  walls." ECF No. 33 at 9. By contrast, Covington attests that his estimate left only

13  undamaged walls and undamaged portions of the fir floors in place. ECF No. 40 at

14  2. Covington further declared, "If I had been hired by plaintiffs to perform the repair

15  work, I would have notified both plaintiffs and State Farm if I discovered hidden

16  damage that was covered by a wall or otherwise obstructed from view during the

17  estimation process." *Id.* at 3.

18       In addition, the parties dispute whether the end product of the Covington

19  proposal would be the aesthetic equivalent of how Chapman's rental property looked

20  and functioned prior to the fire. Maib contended that the Sawzall method suggested

21

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFFS' MOTIONS TO AMEND COMPLAINT AND TO
STRIKE DECLARATION ~ 10

in the Covington Estimate would impact any future remodel involving removal of an interior wall of the house. ECF No. 36-4 at 5−6. Maib states that Chapman "can't just now pull that wall out . . . and then have a beautiful continuous fir floor." *Id.* However, Covington asserts that the method of cutting out damaged portions of the flooring and lacing in new pieces of wood, both for the fir floors and the areas of the house finished with oak flooring, would produce a result without any "aesthetic or functional difference between the old and new wood." ECF No. 40 at 3.

## JURISDICTION

This matter is before the Court on diversity jurisdiction, pursuant to 28 U.S.C. § 1332, with responses from Chapman to interrogatories and requests for production claiming in excess of $75,000 in damages.[1] ECF No. 3, 3-1.

## DISCUSSION

### Motion to Amend

#### *Legal Standard*

Chapman relies in his motion on Fed. R. Civ. P. Rule 15(a)(2) and the accompanying "strong policy permitting amendment." ECF No. 29 at 2 (quoting *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 371 (9th Cir. 1992)). However, Fed. R. Civ. P. Rule 16(b), rather than Rule 15(a), controls in this

---

[1] Plaintiffs' complaint does not specify the amount in controversy. *See* ECF No. 1-1.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTIONS TO AMEND COMPLAINT AND TO STRIKE DECLARATION ~ 11

situation because the Court entered a bench trial scheduling order on November 14, 2017, that provided that "any motion to amend pleadings . . . shall be filed and served on or before December 21, 2017, or meet the standard of Fed. R. Civ. P. 16(b)(4)." ECF No. 11 at 3.

To amend a complaint after a deadline in a scheduling order has passed, the party must show "good cause" for the amendment and obtain the judge's consent. Fed. R. Civ. P. 16(b)(4). Once a scheduling order is filed, a plaintiff must meet the good cause standard of Rule 16 rather than the liberal pleading standard of Rule 15. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). A party must move to amend the scheduling order and then, if leave is granted, move to amend the complaint. *Id.* "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* at 609.

*Discussion*

The operative complaint in this action states claims for breach of insurance contract and breach of duty of good faith and fair dealing. ECF No. 1-1. Chapman seeks to amend his complaint to add claims for: (1) declaratory judgment; (2) negligent claims handling; (3) unfair and deceptive practices under the Washington Consumer Protection Act; (4) constructive fraud; (5) injunctive relief; and (6)

unreasonably denying claims for coverage or payment under the Washington Insurance Fair Conduct Act. ECF No. 29-1. However, in his reply brief, Chapman withdraws his request to amend the complaint to add a constructive fraud claim and argues that "all of the claims absent the constructive fraud claim have already been aired, discovered, and opined upon by the parties' experts." ECF No. 43 at 2.

Chapman maintains that he was diligent in seeking amendment of his complaint, despite missing the deadline to amend by thirteen months, because Chapman's counsel allegedly thought that he had timely filed the amended complaint and did not realize that the complaint had not been amended until reviewing State Farm's instant motion for summary judgment in mid- to late-January 2019. ECF No. 29 at 6−7. Chapman characterizes the blunder as a "clerical error" and asserts that Chapman's counsel saw a .pdf file version of the amended complaint in his law office's electronic file for this case and assumed that it had been filed in Pierce County Superior Court prior to removal. ECF Nos. 43 at 1−2; 29 at 7.

Chapman further argues that the case proceeded "as though IFCA and the rest of the claims contained [sic] ECF No. 29-1 were in play: both experts addressed such claims in their reports." ECF No. 43 at 3.

However, State Farm argues that Chapman's reasons for failing to file the amended complaint by the established deadline or to seek leave to amend the

complaint at an earlier time do not amount to good cause. *See* ECF No. 37. State

Farm asserts that it will be prejudiced if Chapman is allowed to amend his complaint

within such close proximity to the scheduled bench trial and after the discovery

cutoff has passed because of additional expense, inconvenience, and delay. *Id.* at 9.

Chapman acknowledged a need to file an amended complaint at the

scheduling conference in November 2017, nine months after Chapman claims that

his clerical error occurred. The Court discussed the December 21, 2017 amendment

deadline with the parties at the scheduling conference. *See* ECF No. 10. However,

Chapman did not move to amend until January 2019, after State Farm filed its

motion for summary judgment. Chapman did not demonstrate diligence in

complying with the amendment deadline set by the Court or in seeking an extended

opportunity to amend. *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th

Cir. 2002) ("If the party seeking the modification 'was not diligent, the inquiry

should end' and the motion to modify should not be granted.") (quoting *Johnson*,

975 F.2d at 609). In addition, regardless of whether Chapman thinks that he would

have proceeded the same way throughout discovery had the amended complaint

been operative, his postulation that State Farm would not have navigated the case

differently cannot be verified. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294

(9th Cir. 2000) ("Prejudice to the nonmoving party, while not required under Rule

16(b)'s good cause assessment, can serve as an additional reason to deny a

motion[.]").  Therefore, the Court does not find that Chapman has shown good cause to allow the untimely amended complaint.

**Motion to Strike**

Chapman moves to strike the declaration of Bob Covington, ECF No. 40, as "new evidence" that State Farm submitted with its reply.  ECF No. 45 at 3.  Chapman argues that Covington is an "undisclosed witness, who may also be an expert, presenting his professional opinion about the extent of the repairs necessary to restore Chapman's property using like kind and quality construction as required by the policy of insurance . . . ." *Id.*

State Farm responds that the Covington declaration was justified in that it addressed Chapman's primary argument in response to the summary judgment motion, that State Farm's proposed repair method did not provide Chapman with "like kind and quality[.]" *See* ECF No. 49 at 5.  State Farm further argues that Chapman was aware since May and July 2016 of Covington Construction's involvement in the case when State Farm provided Covington's repair estimates. *Id.* at 5−6. In addition, State Farm argues that Chapman could have deposed Covington or another corporate designee during discovery. *Id.*   State Farm suggests that the appropriate remedy in the event that the Court determines the Covington declaration to be new evidence would be for Chapman to have an opportunity to file a sur-reply prior to disposition of the summary judgment motion.  *Id.* at 5.  However, Chapman

did not file a reply regarding the motion to strike requesting an opportunity to file a sur-reply, and the Court will not grant that opportunity *sua sponte*.

The Court finds that Covington's declaration is proffered to rebut Chapman's arguments in his response and is from a source known to Chapman before the declaration was filed. Therefore, Covington's declaration is warranted by the content of Chapman's response. In addition, Chapman did not file a reply seeking an opportunity to respond with further submissions of his own, such as through a sur-reply to the summary judgment motion. Consequently, Chapman's motion to strike is denied. Nevertheless, the Court will evaluate whether the same conclusion regarding summary judgment is appropriate with or without Covington's declaration in the record.

## **Motion for Summary Judgment**

State Farm moves for summary judgment dismissal of both claims raised by Chapman's operative complaint: breach of contract and breach of the implied covenant of good faith and fair dealing.

### *Legal Standard*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute exists where "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. If the moving party meets this challenge, the burden shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial." *Id.* at 324 (internal quotations omitted). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). In deciding a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 631–32 (9th Cir. 1987).

*Breach of Contract*

A plaintiff claiming breach of contract "must prove that a valid agreement existed between the parties, the agreement was breached, and the plaintiff was damaged." *Univ. of Wash. v. Gov't Emps. Ins. Co.*, 200 Wn. App. 455, 467 (Wash. Div. 1 2017) (citing *Lehrer v. Dep't of Soc. & Health Servs.*, 101 Wn. App. 509, 516 (Wash. 2000)). Under Washington law, interpretation of an insurance policy is a

question of law, and the court must construe the policy as a whole and give each clause force and effect. *Overton v. Consolidated Ins. Co.*, 145 Wn.2d 417 (Wash. 2002).

As a preliminary matter, the Court notes that Chapman did not dispute at summary judgment the reasonableness of the lost rent benefits paid to Chapman during the claim settlement process. As such, Chapman's assertion prior to removal that he was owed "at least five additional months loss of rents" is deemed waived. ECF No. 3-1 at 17.

Chapman's argument in opposition to summary judgment is distilled as: "If the Insureds had a continuous wood (fir) floor before the Fire, they are entitled to a continuous wood floor after the Fire; they are certainly not required to accept a 'patchwork' wood floor so that State Farm can minimize the cost of the Claim." ECF No. 33 at 9. Chapman maintains that failing to remove all of the interior walls and replacing the entirety of the "continuous wood floor," violates State Farm's contractual duty to provide for "equivalent construction." ECF No. 33 at 9. Upon review of the record and without relying on Covington's declaration, the Court finds no genuine dispute of fact to validate that a reasonable factfinder could agree with Chapman.

First, Chapman contends that the entire fir floor was damaged, including underneath the walls, but does not cite to any evidence in the record to support that

contention.  *Compare* ECF No. 34 at 3 (Chapman's statement of facts stating that the Sawzall method would "leave the damaged wood floor under each wall") *with* ECF No. 36-4 at 3 (document cited by Chapman's statement of facts, but in which Maib merely states that he would not recommend using the Sawzall method of cutting out flooring because the rental house did not have flooring that was cut out by a Sawzall before the fire); *see also* ECF No. 33 at 9 (portion of Chapman's response brief characterizing State Farm's position as claiming an entitlement to save money by replacing only some of the fir floor and disregarding "damaged floor under the stud walls.").  The Court does not find evidence to support that State Farm's replacement cost estimate was premised on leaving walls intact over flooring that was known to be damaged.

Second, Maib, the public adjuster who provided the repair estimate on which Chapman relies to argue that he was entitled to a higher settlement amount, offered a different basis for the conclusion that the Sawzall approach violated the "equivalent construction" and "new materials of like kind and quality" obligations.  Maib asserted that prior to the fire Chapman could have removed a wall during a renovation and revealed "continuous fir flooring."  ECF No. 36-4 at 5.  By contrast, Maib testified at deposition, "[N]ow they pull out this wall, because of this improper repair or one that doesn't make them like they were before the fire, that wall is now

gone and they have got Sawzalled interruption.  They don't have a continuous floor."  *Id.*

State Farm submitted a declaration by construction consultant Daniels that refutes whether the floors ever were continuous in the sense that they were composed of uninterrupted planks that ran the length of the house.   ECF No. 41.  However, Chapman does not offer competent evidence to support that contention, only Maib's speculative claim that the floors would not be able to be remodeled to the same aesthetic standard if Chapman chose to remove or move interior walls in the future.

Moreover, neither of Chapman's theories of breach is availing in light of the plain language of the insurance contract.  The policy obligated State Farm to pay Chapman the lesser of:

> (d)    The replacement cost of that part of the building damaged *for equivalent construction and use* on the same premises;
> (e)    The amount actually and necessarily spent to repair or replace the damaged building; or
> (f)    The limit stated in the Extra Replacement Cost Coverage provision.

ECF No. 25-1 at 14 (emphasis added).  The insurance policy further defined "replacement cost" as "the cost, at the time of loss, to repair or replace the damaged property with *new materials of like kind and quality*, without deduction for depreciation."  ECF No. 25-1 at 21.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTIONS TO AMEND COMPLAINT AND TO STRIKE DECLARATION ~ 20

Chapman's rental house before the fire had fir floor that was covered with various other flooring materials. The undisputed factual record supports that State Farm's estimate accounted for the cost to replace the damaged floors and walls with "new materials of like kind and quality." *See* ECF No. 25-1 at 21. In contrast, Chapman provides no evidence for his assertion that the only way to satisfy the contractual language was to remove and rebuild everything rather than cutting out damaged materials and replacing them with new materials.

Chapman's claims-handling expert Williams testified at deposition that water that is applied to a fire by emergency responders sometimes contains chemical additives that can permeate and damage walls. ECF No. 42-1 at 3−4.[2] Beyond Williams' assertion of what generally can happen with water used to extinguish a fire, the Court does not find support in the record for Chapman's position that the walls that were not slated for removal in the Covington Estimate were damaged or were standing on damaged floor. Notably, the general manager from Belfor, who was retained by Chapman, testified at his deposition that it would be possible to repair the damaged floors without also having to replace undamaged wall framing

---

[2] The Court notes that State Farm moves in a footnote of its reply brief to strike Williams' statements regarding the techniques and substances utilized by firefighters in extinguishing a fire as outside of his area of expertise. ECF No. 39 at 2 n. 1. Defendant did not file a formal motion to strike nor set its request to strike for hearing. Accordingly, the Court declines to treat and resolve this request as a motion because Chapman had no opportunity to respond.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTIONS TO AMEND COMPLAINT AND TO STRIKE DECLARATION ~ 21

that is sitting on top of the floors, although he considered cutting out portions of fir

floor impractical because of the time involved to employ the Sawzall.  ECF No. 25-3

at 8.  The Belfor general manager's deposition testimony did not support, nor did

anything else in the record cited by Chapman, that the state of the property following

the Sawzall repair would amount to less than "equivalent construction" or that

repairs with a Sawzall would result in a lesser kind and quality than existed prior to

the fire.

Finally, the Covington declaration submitted by State Farm provides further,

though unessential, support that the method of replacing only what was damaged

would have resulted in repairs to the floor with "no aesthetic or functional difference

between the old and new wood."  ECF No. 40 at 3.

*Breach of Duty of Good Faith and Fair Dealing*

Inherent in every contract under Washington law is "an implied duty of good

faith and fair dealing that obligates the parties to cooperate with each other so that

each may obtain the full benefit of performance." *Rekhter v. State, Dep't of Soc. &

Health Servs.*, 180 Wn.2d 102, 112 (Wash. 2014).   For insurance contracts, an

insurer is required to exercise discretion reasonably in light of all the facts and

circumstances of the case.  *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 486 (2003).

The Washington Supreme Court has delineated the legal inquiry as follows:

> If the insured claims that the insurer denied coverage unreasonably in
> bad faith, then the insured must come forward with evidence that the

insurer acted unreasonably. The policyholder has the burden of proof. The insurer is entitled to summary judgment if reasonable minds could not differ that its denial of coverage was based upon reasonable grounds. If, however, reasonable minds could differ that the insurer's conduct was reasonable, or if there are material issues of fact with respect to the reasonableness of the insurer's action, then summary judgment is not appropriate. If the insurer can point to a reasonable basis for its action, this reasonable basis is significant evidence that it did not act in bad faith and may even establish that reasonable minds could not differ that its denial of coverage was justified. However, the existence of some theoretical reasonable basis for the insurer's conduct does not end the inquiry. The insured may present evidence that the insurer's alleged reasonable basis was not the actual basis for its action, or that other factors outweighed the alleged reasonable basis.

*Id.*

Chapman has not come forward with evidence in this matter that State Farm acted unreasonably. Rather, the record reflects that State Farm based its decision regarding both the ACV and RCV amounts that applied to Chapman's insurance claim on ample information in the record and did not overemphasize State Farm's own interests. In addition, the record supports that State Farm was poised to increase the RCV up to the policy limit to account for damage that was discovered during the repair work. ECF Nos. 25-2 at 7−8; 25-6 at 5; and 40 at 3. Finally, Chapman has not proffered evidence that State Farm's alleged reasonable basis was pretextual.

Therefore, the Court finds that summary judgment for State Farm on the breach of contract and breach of duty of good faith and fair dealing claims is appropriate.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion to Amend the Complaint, **ECF No. 29**, is **DENIED**.

2. Plaintiffs' Motion to Strike, **ECF No. 45**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 24**, is **GRANTED**.

4. Judgment shall be entered for Defendant.

5. Any pending motions are **DENIED AS MOOT**, and upcoming deadlines and hearings are **STRICKEN**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, provide copies to counsel, and **close the case**.

**DATED** April 15, 2019.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge